## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



<strong>FILED</strong>

Jul 10 2017, 5:35 am

<strong>CLERK</strong>
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Qwonzell L. Jackson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 10, 2017<br><br>Court of Appeals Case No.<br>79A04-1612-CR-2905<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1510-F5-49 |

**Crone, Judge.**

## Case Summary

[1] Qwonzell Larville Jackson appeals his conviction, following a jury trial, for level 5 felony carrying a handgun without a license while having a prior felony conviction and level 5 felony criminal recklessness. He contends that the State presented insufficient evidence to support his convictions. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

[2] Leroy Rimschneider and Antwon Sutton, brothers and mechanics by trade, had been friends with Jackson for several years. Jackson had recently purchased a radio and amplifier for the sound system in his van. On the afternoon of October 7, 2015, Jackson drove his van to Sutton's house to seek Sutton's assistance to install the sound equipment. Early the next morning, Jackson went to start the engine of his van when he noticed that his recently installed sound equipment was missing. Jackson immediately suspected Rimschneider and Sutton as the culprits.

[3] Jackson first drove to Rimschneider's house. Rimschneider's fiancée was outside the house about to take their children to school when she noticed Jackson pull up. She went back inside the house and told Rimschneider that Jackson was waiting outside to speak with him. According to Rimschneider, Jackson was "very hostile and angry." Tr. Vol. 2 at 67. Jackson accused Rimschneider and his brother of stealing his stereo equipment, which Rimschneider denied. Unsatisfied with Rimschneider's denial, Jackson

announced that he was going to drive to Sutton's house next. Rimschneider, concerned about his brother's safety, asked a friend to drive him to Sutton's house.

[4]     Jackson arrived at Sutton's house and called him on the phone. Sutton was asleep, and his fiancée answered the phone. As they conversed, she went to the front door and noticed that Jackson was peering into the windows of their car. Jackson asked her to wake up Sutton because he needed to speak with him about his missing sound equipment. Sutton came outside, and Jackson angrily accused him. Sutton also denied the theft, and Rimschneider arrived at the house shortly thereafter. Rimschneider's friend stayed inside the vehicle. A heated argument ensued primarily between Rimschneider and Jackson. Jackson eventually left in his van, but assured the brothers that he would return.

[5]     After Jackson left, Rimschneider's fiancée arrived at Sutton's house. The two brothers and their fiancées stood and talked in the front lawn near the street. After five to seven minutes, Jackson returned, parked on the opposite side of the street, and exited the van with a semiautomatic handgun. Jackson walked directly toward Rimschneider while pointing the gun at him, saying, "I'll shoot you." *Id*. at 71. The threat angered Rimschneider, and he began walking toward Jackson. Jackson returned to his van, reached out the window, and shot a single round at Rimschneider, who was near the rear of the van. Jackson sped off, and Rimschneider and his friend attempted to pursue him.

[6] A few minutes after the shooting, the police arrived to investigate. The police searched for a bullet casing and signs of impact, but were unsuccessful. They interviewed neighbors, who had heard a loud "bang," and one neighbor identified the sound as a gunshot. *Id.* at 19. While the police were still on the premises, Jackson called Sutton's phone, and his fiancée answered it. She broadcasted the conversation over speaker phone so that those standing near her could hear Jackson. Lafayette Police Department Officer Heath Provo heard Sutton's fiancée ask Jackson why he shot at Rimschneider. Jackson responded, "[B]ecause they rolled up on me." *Id.* at 161; State's Exs. 2 and 2-R. Jackson was arrested at his residence. The police executed a search warrant for the residence and the van, but it did not yield any handgun-related evidence.

[7] The State charged Jackson with level 5 felony carrying a handgun without a license while having a prior felony conviction, level 5 felony attempted battery, level 5 felony criminal recklessness, level 6 felony pointing a firearm, and with being a habitual offender. Following a jury trial, Jackson was found guilty of level 5 felony carrying a handgun without a license while having a prior felony conviction and level 5 felony criminal recklessness. The trial court imposed concurrent six-year sentences with a year and a half of the sentence suspended. Jackson now appeals.

## Discussion and Decision

[8] Jackson contends that the State failed to present sufficient evidence to support both convictions. The standard of review for a sufficiency claim is well settled. We neither reweigh the evidence nor assess the credibility of witnesses. *Bell v.*

*State*, 31 N.E.3d 495, 499 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the conviction. *Id.* Whenever presented with conflicting evidence, we consider such evidence in the light most favorable to the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). A conviction will be affirmed unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015).

[9] To convict Jackson of level 5 felony carrying a handgun without a license while having a prior felony conviction, the State was required to prove that he knowingly or intentionally carried a handgun in a vehicle or on or about his body without being licensed, and he had been convicted of a felony within fifteen years before the date of the offense. Ind. Code § 35-47-2-1(a), -(e)(2)(B) (2015). To convict Jackson of level 5 felony criminal recklessness, the State was required to prove that he recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person by shooting a firearm into a place where people are likely to gather. Ind. Code § 35-42-2-2(b)(2)(A) (2015). Jackson contends that there is insufficient evidence to support his convictions because the witness testimony that he possessed a handgun was "wholly unsupported by police investigation." Appellant's Br. at 6. Specifically, Jackson notes that the police failed to find the handgun, a spent shell casing, any evidence of impact, or any other handgun-related accessories.

[10] While there is a lack of physical evidence here, there is substantial direct evidence via witness testimony. Five eyewitnesses testified that Jackson

possessed a handgun and pointed it at the brothers, and they either saw or heard the handgun being fired at Rimschneider. Three neighbors, who served as corroborating witnesses, testified that they heard a loud bang, and at least one identified the sound as a gunshot. Moreover, Officer Provo and Sutton's fiancée testified that they heard Jackson admit to shooting at Rimschneider because "[Rimschneider and Sutton] rolled up on me." *Id.* at 161; State's Exs. 2 and 2-R. Based on these facts, the trier of fact could reasonably infer that Jackson did indeed possess a handgun and fired that handgun at Rimschneider. Jackson's sufficiency claim is merely an invitation for this Court to reweigh the evidence and assess the credibility of the witnesses, which we cannot do. *Bell*, 31 N.E.3d at 499. Therefore, we affirm Jackson's convictions.

[11] Affirmed.

Baker, J., and Barnes, J., concur.